(R.D. 11356)

BOOK OF THE MONTH CLUB *v.* UNITED STATES

(Decided September 6, 1967)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*Carl Eardley*, Acting Assistant Attorney General (*Samuel D. Spector* and
*Glenn E. Harris*, trial attorneys), for the defendant.

OLIVER, Judge: This appeal for reappraisement covers merchandise consisting of small microscopes and telescopes exported from Japan on October 16, 1959. The articles do not appear on the final list (T.D. 54521), and they were appraised on the basis of export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, at an amount equal to the invoice unit values ($0.96 for the microscopes and $1.16 for the telescopes) plus charges for packing, inland freight, and shipping. An agent's commission was not included as part of the appraised values. Plaintiff does not contest the basis of value, nor the added packing charge, but maintains that the additions for shipping and inland freight form no part of the dutiable export values.

Export value, as defined in section 402(b) of the tariff act, as amended, *supra*, provides as follows:

(b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

Before turning to the evidence in this case, it is important to state clearly what is in dispute between the parties. The articles were invoiced at ex-factory figures together with separate charges for packing, inland freight, shipping, and agent's commission. The appraiser stated in red ink that he "appr. at Inv. Units Plus items marked X". X's were placed next to the packing and inland freight and shipping charges. The plaintiff at trial and in its brief has accepted the ex-factory appraisement and explicitly challenges only the additions for freight and

shipping. Despite intimations to the contrary during trial, the defendant in its brief, as well as in its statement filed pursuant to rule 15, has clearly stated its acceptance of the appraised values. There is before me here, therefore, the classic situation involving a separable appraisement (see accord *Kurt Orban Company, Inc.* v. *United States*, 52 CCPA 20, C.A.D. 851), and the plaintiff is entitled to rely upon so much of the appraisement as remains unchallenged and to litigate only those elements he wishes to dispute. *United States* v. *Gehrig, Hoban & Co., Inc.*, 54 CCPA 129, C.A.D. 924; *United States* v. *Fritzsche Bros., Inc.*, 35 CCPA 60, C.A.D. 371. Whether or not the inland freight and shipping charges are properly includible in determining export value is the sole issue in this case and any evidence and/or arguments addressed to other matters, such as whether plaintiff has established the usual wholesale quantities in which the merchandise was sold, cover areas outside the scope of this litigation and will not be dealt with by this court.

Mr. Allan Ullman, called by the plaintiff, testified that in 1958 and 1959 he was employed in the Promotion Department of the Book-of-the-Month Club, Inc., a company whose primary business is selling subscriptions to Book-of-the-Month and various subsidiary clubs. In line with his duties, he had conceived the idea of utilizing microscopes and telescopes as inducements for young persons to join the Young Readers of America, a subsidiary club. Contact was made with the Matsuzaka Trading Co. (hereinafter referred to as Matsuzaka) and it was retained as plaintiff's Japanese buying agent. Plaintiff's exhibit 3 was received in evidence as a copy of the agency agreement. From various samples, Mr. Ullman selected those manufactured by the Hishimoto Trading Co., Ltd. (hereinafter referred to as Hishimoto), and recommended their purchase to his company. The recommendation was accepted and orders were placed with Matsuzaka. Ullman testified further that he had nothing more to do with ordering this merchandise except to see that the responsible party continued to place additional orders. As to the purchase price and terms, he stated (R. 15):

A. As I recall it, the prices were the prices at the factory, and to these prices were various charges, some of which I don't understand to this day, and what I tried to get ultimately was what the cost to us would be landed here.

Representative samples of the imported articles were received in evidence as plaintiff's exhibits 1 and 2. The witness also identified plaintiff's exhibits 4 and 5 as his company's confirmations of the orders placed with Matsuzaka covering the merchandise on the involved entry. Each document contains the ex-factory prices claimed by the plaintiff plus separate packing, freight, shipping, and commission charges

equaling an f.o.b. Yokohama price. The c.i.f. New York prices are also listed with the additions for ocean freight and insurance.

Plaintiff's exhibit 6 is an affidavit of Mr. M. Kobayashi, managing director of Hishimoto, dated November 2, 1962. So far as pertinent to the determination presented by this case, the affiant states that he is personally familiar with sales of microscopes and telescopes to the plaintiff through its agent Matsuzaka; that the Book-of-the-Month Club, Inc., is a good customer of Hishimoto, is not related to Hishimoto, and Hishimoto sells to it on the same terms and conditions as it does to other customers; and that Matsuzaka is in no way connected with Hishimoto and that Hishimoto knows it as the purchasing agent of the plaintiff company. At the beginning of the third paragraph, the affidavit reads as follows:

2. The said Microscopes and Telescopes are freely offered for sale to anyone who wants to buy them at prices computed at the point of delivery at the Hishimoto factory. All delivery charges or other charges subsequent to delivery at the factory, are for the account of the buyer.

Defendant's evidence, collective exhibit A, consists of a Treasury report together with several attachments, including another affidavit of Mr. Kobayashi of Hishimoto, dated March 9, 1965. The report, dated March 31, 1965, and signed by the Assistant Regional Customs Representative in Tokyo, purports to cover microscopes and telescopes manufactured by Hishimoto and eventually purchased by the Book-of-the-Month Club. Most of the report itself deals with information not relevant to the issue before the court. However, there are statements attributed to a Mr. Terazawa of Matsuzaka that his company did not sell Hishimoto's microscopes and telescopes to any United States company other than the plaintiff and that packing and inland freight charges were reimbursed from Matsuzaka to Hishimoto.

In his second affidavit, referred to *supra* as part of collective exhibit A, Mr. Kobayashi states that during 1959 his company sold microscopes and telescopes to Matsuzaka on an f.o.r. Yokohama basis; that during the same year Hishimoto also sold these items to the Marimo Kogaku Company, Tokyo, at a higher price due solely to the smaller quantities purchased. The final paragraph contains the following statements:

My company has never sold on an ex-factory basis to either Matsuzaka or Marimo. All sales to Matsuzaka and all sales to Marimo have been on an ex-godown basis (FOR). We have quoted ex-factory prices to Matsuzaka and Marimo when they requested such quotations. Payment is always made by Matsuzaka and Marimo to my company in Japanese Yen. No payments have ever been made by Matsuzaka or Marimo to my company in the U.S. dollars.

The rest of the attachments consists of various letters of acknowledgement for Hishimoto to Matsuzaka and confirmations of orders and sales notes, none of which significantly affect the outcome of this controversy.

As mentioned previously, the sole contested issue in this proceeding is whether the inland freight and shipping charges were properly added by the appraiser to the invoiced ex-factory prices. The law on this point has been simply stated to mean that such charges do not form part of the statutory value where it is shown that the merchandise is freely sold (or, in the absence of sales, offered) on an ex-factory basis in the principal markets at a price which does not include such charges. *United States* v. *Paul A. Straub & Co., Inc.*, 41 CCPA 209, C.A.D. 553; *Albert Mottola, etc.* v. *United States*, 46 CCPA 17, C.A.D. 689. Put another way, if there is only a single price available which includes these inland charges and the buyer retains no option to purchase free of them, then they are properly a part of the statutory value. *Kurt Orban Company, Inc.* v. *United States, supra.*

In the *Kurt Orban* case the importer purchased iron and steel wire from various French manufacturers through their common sales agency which was located in Paris. The evidence, mostly affidavit, established that the importer was always free to take delivery of the merchandise at the factory of the manufacturer and be charged on an f.o.b. factory basis (ex-factory prices as invoiced); that all inland charges paid to the sales agency by the importer were geared to reflect actual delivery costs, no profit thereon being intended; and that the risk of loss or damage to the merchandise subsequent to leaving the factory was upon the purchaser. Inasmuch as the price available to purchasers did not necessarily include the inland costs, the court held them to be deductible items in finding the statutory values for such merchandise.

In the instant case, the evidence on this crucial point of the available price to all purchasers is, at the least, muddled, if not in outright conflict. In his initial affidavit, Kobayashi, managing director of the manufacturer/seller, stated that the prices for the microscopes and telescopes are computed on a delivery-at-the-factory basis (the ex-factory prices as invoiced); that they are freely offered to anyone; and that subsequent delivery charges are for the purchaser's account. However, in his subsequent sworn statement, Kobayashi indicates that ex-factory prices are quoted only on request of Matsuzaka and Marimo (seemingly the only companies actually to have purchased this merchandise from Hishimoto) and that all sales have been on a f.o.r.[1] Yokohama basis. If by this later statement it is meant that ex-factory prices are quoted only for purposes of invoicing, while the actual

---

[1] "free on rail" (Webster's Third New International Dictionary–1967 ed.).

basis of dealing is at prices delivered to Yokohama, then Kobayashi's statements are in conflict and offer no probative value to the court. *Fine Arts Bag Co.* v. *United States*, 56 Cust. Ct. 597, R.D. 11128.

On the other hand, if it is meant that prices computed at the factory remained available to any purchaser who wished to take delivery at the factory, then the proof offered to show that fact is, at best, indirect and vague and, therefore, insufficient and not preponderant. The insufficiency of evidence on this point is not overcome in any way by the testimony of plaintiff's witness Ullman who by his own admission was more interested in landed costs than in the terms of sale negotiated through his agent Matsuzaka.

Therefore, on the basis of the record before me, I find the facts to be as follows:

1. That the merchandise involved in this appeal for reappraisement consists of small microscopes and telescopes exported from Japan on October 16, 1959.

2. That said merchandise does not appear on the final list (T.D. 54521) promulgated by the Secretary of the Treasury pursuant to section 6(a) of the Customs Simplification Act of 1956 (T.D. 54165).

3. That said merchandise was entered at invoiced ex-factory unit prices, plus packing charges.

4. That said merchandise was appraised on the basis of export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, at ex-factory unit values, plus charges for packing, inland freight, and shipping.

5. That the record herein does not establish that said merchandise was made available to all purchasers at a price exclusive of inland freight and shipping charges from the factory to the port of Yokohama.

I conclude as to matters of law:

1. That export value, as defined in section 402(b), *supra*, is the proper basis of appraisement for the merchandise covered by this appeal for reappraisement.

2. That the appraisement is separable.

3. That plaintiff has failed to overcome the presumption of correctness attaching to the appraiser's action in adding the inland freight and shipping charges to the entered values.

4. That the dutiable values for said microscopes and telescopes are the appraised values.

Judgment will be entered accordingly.