(Reap. Dec. 10025)

SUPREME MERCHANDISE COMPANY *v.* UNITED STATES

Entry No. WH 00095, etc.

(Decided June 13, 1961)

*Sharretts, Paley & Carter* (*Howard Clare Carter* of counsel) for the plaintiff.
*William H. Orrick, Jr.*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the defendant.

OLIVER, Chief Judge: The appeals for reappraisement enumerated in schedule "A," hereto attached and made a part hereof, all of which were consolidated for trial by consent of the parties, relate to certain cigarette lighters, exported from Japan during the years 1956 and 1957 and entered at the port of New York.

There is no dispute that the proper basis for appraisement of the merchandise in question is export value, as defined in section 402(d) of the Tariff Act of 1930. The parties are at issue over the question whether certain charges, variously identified on the invoices as agent's commission or agent's buying commission, insurance, and shipping charge, are part of statutory export value. The limited issue brings into application the well-established principle that when, as here, only certain items of an appraisement are challenged, the presumption of correctness as to all others is not destroyed, and, therefore, they stand as presumptively correct. *United States* v. *Fritzsche Bros., Inc.*, 35 C.C.P.A. (Customs) 60, C.A.D. 371. The discussion herein is limited accordingly.

Plaintiff claims that the items referred to are not part of the dutiable value of the cigarette lighters in question and that the statutory export value thereof is the *per se* unit invoice values, ex-factory. In alleging that such values represent the export value of the present merchandise, plaintiff contends that the item, described as agent's commission or agent's buying commission, is a buying commission, and that the other items, hereinafter referred to as "inland charges," were incurred in bringing the merchandise "from the factory to the sea port and putting it on board the vessel." To support its position, plaintiff introduced oral testimony and documentary evidence.

A partner of the plaintiff company, an importer of smokers' articles, testified that his duties, since the business was started in 1955, have been to purchase and import merchandise and that, in the course of his duties, he made business trips to Japan. Referring to visits to Japan in his official capacity, the witness stated that he never bought cigarette lighters, such as those in question, directly from Japanese manufacturers and that he always made his purchases through an agent, who made the contacts. Different agents dealt with different manufacturers. The witness stated that plaintiff's agent, Ichikawa, supplied merchandise manufactured by Toho and mentioned the names, Akiyama, Haraki, Aoyagi, and the Aoyagi Metal Manufacturing Co., as

agents that obtained cigarette lighters, like those in question, from the manufacturers, Aoki and Daiwa. Corroborative of his testimony that plaintiff employed buying agents in Japan, the witness produced a sworn statement (plaintiff's exhibit 1), made by Y. Akiyama, manager of the Aoyagi Metal Manufacturing Co. of Tokyo, reading in part as follows:

We hereby certify that we are not [a] manufacturer of Cigarette Lighters, we are buying from manufacturers of lighters as an agent of Supreme Merchandise Co. of 1170 Broadway, New York, since beginning of 1956, and we are always receiving 7½% commission from Supreme Merchandise Co. as showing [sic] on the invoice.

Explaining the services performed for plaintiff by its Japanese agent in the purchase of cigarette lighters, such as the articles in question, the witness testified as follows (R. 9):

* * * He picked up the merchandise at the factory to his place. He did inspect the merchandise; it is the usual thing what he is doing, packed for export, prepared the invoices, made arrangement for exportation, paid shipping charges and others for Supreme. He did the correspondence, and he paid the manufacturer the ex-factory price on account on my letter of credit which I established for Aoyagi and not for the manufacturer, and the balance, amounting to 7½ per cent of the ex-factory price he kept for his services.

Attempting to discredit the witness' direct testimony concerning the relationship between plaintiff and its representatives in Japan, Government counsel, on cross-examination, confronted the witness with invoices, confirmations of orders, and correspondence between plaintiff and its Japanese agent, which had been produced from plaintiff's records under a subpoena duces tecum and admitted in evidence (defendant's collective exhibits D, E, F, G, H, I, and J). These papers, of themselves, are not entirely clear, and tend to reflect a confusing, if not contradictory, situation, but the witness' testimony, on redirect examination and under questioning by the court, satisfactorily clarified the contents thereof to say that plaintiff's purchases of these cigarette lighters in the foreign market were always made, during the period under consideration, through a buying agent who received a commission for his services, and the services performed by the buying agent were the usual services of such agents in Japan in purchasing, inspecting, and shipping merchandise.

Affidavits of Japanese manufacturers (plaintiff's exhibits 2 and 3) support plaintiff's oral testimony. The affidavits were executed by associates of Aoki and Daiwa, manufacturers of cigarette lighters who were mentioned in plaintiff's direct testimony. In both affidavits, affiants testify that, at the time of exportation of the present merchandise, they freely offered for sale, and sold, cigarette lighters, such as those involved herein, to all purchasers at ex-factory prices, and that sales to plaintiff were made through an agent who "accepted

delivery of the various shipments at my factory on behalf of Supreme Merchandise Co.," and that all charges arising thereafter were the responsibilities of either the purchaser or its agent.

Defendant introduced in evidence a report prepared by the supervising Treasury attaché in Tokyo, Japan (defendant's collective exhibit K). The information contained therein includes certain statements that tend to support plaintiff's position. In this connection, the report states that the Aoyagi Metal Manufacturing Co., hereinabove referred to, does not manufacture cigarette lighters or any other metal products, that the firm is an exporter and dealer in such lighters, that it "handles primarily" the products of the two Japanese manufacturers, referred to in plaintiff's affidavits (exhibits 2 and 3, *supra*), and that the said firm performs no function other than that of an exporter. In addition, the report states that Aoyagi "might be considered a buying agent since he does not place firm orders with makers until he, in turn, receives firm orders from importers."

The record herein is not free from conflicting statements, but it is my considered opinion that the preponderance in weight of the evidence—oral testimony coupled with the documentary proof— establishes that the cigarette lighters involved herein were sold at ex-factory prices, which did not include the inland charges, and that plaintiff bought the present merchandise through a buying agent, who received a commission for his services that were associated with the purchase of these cigarette lighters. With such a factual foundation, there is ample judicial authority to support plaintiff's contention that the items in question are nondutiable and, consequently, not part of export value.

Judicial authorities are consistent to the effect that a charge for services associated with the purchase of merchandise in the foreign market, and which is not an amount that inures to the benefit of the seller, is a buying commission, which, although affecting the cost of goods to the importer, is not part of the market value of the merchandise. *United States* v. *Case & Co., Inc.*, 13 Ct. Cust. Appls. 122, T.D. 40958; *United States* v. *Alfred Kohlberg, Inc.*, 27 C.C.P.A. (Customs) 223, C.A.D. 88; *Stein* v. *United States*, 1 Ct. Cust. Appls. 36, T.D. 31007. Under the cited authorities, the item in controversy, identified on the invoices involved herein as agent's commission or agent's buying commission, is a buying commission and, hence, is a nondutiable item.

The condition with respect to the items, referred to herein as inland charges, parallels the situation that was found to prevail in *United States* v. *Dan Brechner et al.*, 38 Cust. Ct. 719, A.R.D. 71. There, as here, it was shown that there existed in the foreign market the usual trade practice of the merchandise in question being offered for sale and sold on an ex-factory basis at prices which did not include the

so-called inland charges herein discussed, and the court held that "Since ex-factory sales, exclusive of export charges have been shown, those charges form no part of the value of the instant merchandise." In the light of similar circumstances in this case, the same conclusion applies concerning the inland charges in controversy herein.

On the basis of the record before me, and for all the reasons hereinabove set forth, I find as facts:

(1)   That the merchandise in question consists of cigarette lighters, exported from Japan during the years 1956 and 1957.

(2)   That, during the period covered by the shipments involved herein, plaintiff employed a buying agent in the foreign market for the purchase of cigarette lighters, such as those in question, that the services performed by such agent in connection with the purchase of these cigarette lighters were those of a buying agent, and that for such services the agent received a buying commission.

(3)   That, at the time of exportation of the merchandise in question, Japanese manufacturers of cigarette lighters, such as or similar to those in question, freely offered for sale and sold to all purchasers in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, such cigarette lighters at ex-factory prices and that such prices are the *per se* invoice unit values, ex-factory.

I conclude as matters of law:

(1)   That the proper basis for appraisement of the cigarette lighters in question is export value, as defined in section 402(d) of the Tariff Act of 1930.

(2)   That such statutory value therefor is the *per se* invoice unit values, ex-factory.

Judgment will be rendered accordingly.