(R.D. 11244)

H & S ORIGINALS v. UNITED STATES

Entry No. 764181, etc.

(Decided December 6, 1966)

*Barnes, Richardson & Colburn* (Norman C. Schwartz of counsel) for the plaintiff.

*Barefoot Sanders*, Assistant Attorney General (*Glenn E. Harris*, trial attorney), for the defendant.

WILSON, Judge: The above appeals for reappraisement were consolidated for trial. The merchandise involved, consisting of beads and costume jewelry, was manufactured by about 20 different companies located in various places in Japan. The items at bar were exported between October 31, 1961, and April 14, 1964, by Sanyei Corporation of Osaka, Japan, as agent and shipper for plaintiff, pursuant to an "AGENCY AGREEMENT" dated October 10, 1961, plaintiff's exhibit 1.

Counsel stipulated (R. 145, 146) that until approximately September 30, 1961, Sanyei Corporation was known as Kyoei Boeki Co., Inc., and also did business from time to time as Nakanishi & Co.; that all of the jewelry makers from whom purchases were made delivered said purchases to Sanyei's warehouse in Osaka and Sanyei then transported the goods to Kobe or other piers for loading.

Entry in each appeal was made at the so-called "ex-factory" or Sanyei's "ex-warehouse" price, which allegedly is the price paid to the various manufacturers. Each invoice shows, in addition to the invoiced unit price and total "ex-factory" price, an item (8 percent) for buying commission (as provided for in plaintiff's exhibit 1). Charges are set forth separately for inland freight, storage, insurance premium, and hauling and lighterage. The invoices also state an "F.O.B. JAPAN TOTAL" price which includes the ex-factory price, plus the 8 percent buying commission and other charges.

The merchandise in each appeal was appraised as shown in R64/12317, which is typical of all appraisements as follows: "All items appraised at invoiced unit values plus 2.3% pkd." However, the percentage advance over invoiced unit values varied in typical in-

stances as follows: 2.3, 2.29, 2.299, 2.8, 1.3, 2.21, 2.27, 1.98, 2⅞, 2.276, 2.298, 2.058, and 2½ percent. These percentage additions, as well as the examiner's other recommendations concerning buying commissions and inland charges, were adopted by the appraiser. The percentage additions are based upon a formula of accepting the "full f.o.b. cost [value] less 7 per cent" (R. 78, 82, 103, 116). The mathematical result of this formula is more specifically indicated, *infra*.

In some of the appeals the importer voluntarily added certain amounts upon entry for beads and/or stones. These were accepted as correct and adopted in the appraisements. In R64/13573, the appraiser added $7.96 for stones, which amount the entrant had not added. However, none of the additions for beads or stones is being contested.

It is not disputed that export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, T.D. 54165, is the proper basis for appraisement. The imported merchandise is not specified on the Final List, 93 Treas. Dec. 14, T.D. 54521.

The act under consideration is section 402(b) of the Tariff Act of 1930, as amended, *supra*, reading:

(b)  EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

Plaintiff appeals from only part of the appraisement in each case as set forth in page one of its brief:

The importer challenges the percentage additions as unauthorized by law on the grounds that they represent arbitrary additions of part of the buying commissions and inland charges which, under settled law, form no part of statutory export value in their entirety.

Accordingly, at the outset, the plaintiff contends that the appraisements are severable, and it, therefore, limits its challenge to the correctness of the percentage additions made by the appraiser. This claim was also made at the commencement of trial (R. 9–10). In support of this claim plaintiff cites the cases of *United States* v. *Schroeder & Tremayne, Inc., James H. Rhodes & Co.*, 41 CCPA 243, C.A.D. 558, which cites *United States* v. *Fritzsche Bros., Inc.*, 35 CCPA 60, C.A.D. 371, and *United States* v. *Freedman & Slater, Inc.*

(*Household Utilities Mfg. Corp.*), 25 CCPA 112, T.D. 49241; *Dan Brechner et al.* v. *United States*, 36 Cust. Ct. 612, Reap. Dec. 8599, affirmed in *United States* v. *Dan Brechner et al.*, 38 Cust. Ct. 719, A.R.D. 71; *United States* v. *Supreme Merchandise Company*, 48 Cust. Ct. 714, A.R.D. 145, and *Haddad & Sons, Inc.* v. *United States*, 54 Cust. Ct. 475, Reap. Dec. 10874. Application for review pending.

The foregoing cases amply support the plaintiff's position on the severability of the items covered by the appraisements. The rule is clearly stated in the *Schroeder & Tremayne* case, *supra* (page 246), as follows: "However, we have ruled that the challenging of one item of an appraisement does not destroy the presumption of correctness attaching to all the other items of the appraisement."

It is, therefore, necessary that the court concern itself only with plaintiff's claim that certain portions of the alleged buying commissions, which properly form no part of the appraised value of the merchandise in question, were erroneously added to the appraisals. As stated in *Haddad & Sons, Inc., supra,* "The crux of this case is factual."

The law is clearly established to the effect that buying commissions paid by the importer are not a proper part of appraised value. The law applicable is stated in *Supreme Merchandise Company* v. *United States,* 46 Cust. Ct. 711, 714, Reap. Dec. 10025, as follows:

Judicial authorities are consistent to the effect that a charge for services associated with the purchase of merchandise in the foreign market, and which is not an amount that inures to the benefit of the seller, is a buying commission, which, although affecting the cost of goods to the importer, is not part of the market value of the merchandise. *United States* v. *Case & Co., Inc.,* 13 Ct. Cust. Appls. 122, T.D. 40958; *United States* v. *Alfred Kohlberg, Inc.,* 27 C.C.P.A. (Customs) 223, C.A.D. 88; *Stein* v. *United States,* 1 Ct. Cust. Appls. 36, T.D. 31007. Under the cited authorities, the item in controversy, identified on the invoices involved herein as agent's commission or agent's buying commission, is a buying commission and, hence, is a nondutiable item.

The above case was affirmed in *United States* v. *Supreme Merchandise Company,* 48 Cust. Ct. 714, A.R.D. 145. See also *Aceto Chemical Co., Inc.* v. *United States,* 51 CCPA 121, C.A.D. 846; *Kurt Orban Company, Inc.* v. *United States,* 52 CCPA 20, C.A.D. 851, and *Fine Arts Bag Co.* v. *United States,* 56 Cust. Ct. 597, Reap. Dec. 11128.

The defendant contends that plaintiff has not met its burden of proof and asserts that the real issue is whether plaintiff's claimed "ex-factory" prices or the appraised value represent the correct export value. The Government further argues that the plaintiff's reliance upon the rule of severability is "entirely misplaced." This latter contention the court deems to be without merit and it will not be further discussed, the court being convinced that the cases on the point herein-before cited are dispositive of this issue.

The evidence, documentary and oral, in this case clearly supports the claim of the plaintiff that 8 percent buying commission was paid by the importer and that only part of the commissions paid were deducted in arriving at the appraised values. Joel Margulies, a line examiner for the Government, who advisorily recommended to the United States appraiser the values adopted in the cases before the court, when called by the plaintiff, testified in part as follows:

Q. In each of your advisory recommendations or advisory appraisements on merchandise shipped by Sanyei Corporation subsequent to Entry 825995, of November 1, '61, did you in fact recommend appraisement at a figure equivalent to the full f.o.b. value less only 7 percent for commissions and charges?—A. In effect that was the result, yes. The appraisement was not stated in those terms, but the result was the same.

Q. You allowed commissions and charges up to a maximum of 7 percent of full f.o.b. value, is that the case?—A. Yes.

Q. As stated on the Form 5555, Mr. Margulies?—A. Yes. [R. 81–82.]

Under redirect examination Mr. Margulies testified as follows:

The full FOB amount shown on the invoice was a much higher amount than my appraised value, and the difference between my appraised value, and the amounts shown for commission and inland charges resulting in a full FOB amount, that difference was what I allowed for commission and inland charges. [R. 118.]

\* \* \* \* \* \* \*

Q. Your appraisements were expressed in terms of the invoiced unit values, which are ex-factory values, plus a percentage; am I correct on that?—A. Yes.

Q. Did this percentage, if totalled out, extended, equal full FOB value, less only 7%, in each instance?—A. Yes.

Q. In other words, you allowed a portion of the buying commission, and a portion of the inland charges?—A. The result was that, yes. [R. 119.]

The reports (defendant's exhibits A and B) and the affidavit (exhibit C) are not in the opinion of the court of such weight as to affect the factual situation based on the testimony introduced by the plaintiff.

Plaintiff offered two affidavits of H. Watanabe, managing director of Sanyei. One sworn to before an American Vice Consul, November 2, 1964, was received as plaintiff's exhibit 22. The other affidavit, sworn to before an American Vice Consul, May 6, 1965, was received as plaintiff's exhibit 23.

Plaintiff's exhibit 22 alleges that Watanabe, by virtue of his duties and responsibilities as managing director with Sanyei, is fully and personally aware of the firm's business operations from 1961; that his firm is the buying agent for a number of American purchasers of vari-

ous items and that his company has been buying agent for H & S Originals since October 10, 1961, under a written agreement. Pursuant to said agreement (exhibit 1) his company purchases costume jewelry from various Japanese manufacturers for the account of plaintiff; frequently checks on the progress of production of each order; draws counter samples and advance samples from actual production, which are sent to plaintiff for approval; picks up merchandise at various factories and inspects it closely. He alleges that "We also paid the manufacturers in local currency, out of letter of credit funds sent to" Sanyei by plaintiff. The shipper prepares necessary export documents and invoices; causes the merchandise to be shipped to various outgoing vessels and pays the various inland transportation and storage charges. He states that *"For such services, we received the buying commission of 8% of the ex-factory price specified in the said buying agreement."* [Emphasis supplied.] He further states that his "Company, in preparing the invoices on each shipment to H. & S. Originals, Inc., faithfully and truly set forth the actual ex-factory prices, the actual inland freight, storage and associated charges incurred in moving the merchandise from the factory to the vessel, and the actual buying commission received by the Company." He states that he reads, writes, and understands English.

In plaintiff's exhibit 23, Watanabe alleges that he is the same person who executed exhibit 22 and that the purpose of exhibit 23 is to supplement and clarify some statements in his prior affidavit. He states that, since September 1961, Sanyei has maintained a warehouse in Osaka where its predecessor, Kyoei Boeki Co., also known as Nakanishi & Co., also maintained the same warehouse. He states that actually Sanyei has picked up and will pick up the merchandise at the factories from the sellers where the merchandise is urgently required, but that, in the normal course, the sellers will deliver the merchandise to the Sanyei warehouse at Osaka. No seller delivers merchandise directly to the pier at Kobe. He alleges that the sellers' prices include cost of manufacture, including profit, individual containers, inner cartons, export cases and packing; transportation to Sanyei warehouse; insurance (if any) covering the goods while in transit from sellers' factories to Sanyei's warehouse. Sanyei pays, subject to reimbursement by plaintiff for freight from Osaka to Kobe, any storage charges incurred after the merchandise is received from the sellers, insurance premium covering the goods between Sanyei warehouse and export vessel, and hauling and lighterage to export vessel. He states that these charges are accurately set forth on the invoice which Sanyei prepares, and that the invoices show the agreed prices with the various sellers; that the invoices state the prices as "ex-factory," but, in fact, the prices are "the prices actually paid to the various sellers in yen, taking into

account currency fluctuations and occasional inaccuracies in figuring." He further alleges that "No part whatsoever of either our buying commission or the various charges from Sanyei warehouse to export vessel are paid to, or shared in any way with the various sellers."

The probative evidence of record is sufficient to overcome the statutory presumptive correctness ordinarily attaching to the values found by the appraiser. 28 U.S. Code, section 2633. The plaintiff has presented competent and persuasive evidence making out a *prima facie* case which successfully challenges the appraiser's finding of value made on the basis of invoiced unit prices, plus a varied percentage in each case under a formula recommended by the line examiner which allows only 7 percent of the full f.o.b. invoiced cost, *thus allowing some but not all* of the invoiced 8 percent buying commission or of the invoiced other inland charges. The varied percentage additions being arbitrarily made, and without justification, have the effect of leaving the invoice unit price of each item in each entry as the correct export value by reason of the successful challenge to said varied percentage additions. As the appraisement in each case is erroneous, and as the importer established a different value in place thereof, it was incumbent upon defendant to prove that the appraised value in each case is correct and proper. Evidence introduced by defendant does not support the appraised value. *Kobe Import Co.* v. *United States*, 42 CCPA 194, C.A.D. 593; *I. Arditi* v. *United States*, 50 CCPA 49, C.A.D. 818, and cases cited.

On the record herein, I find the following facts:

1. The merchandise covered by these 76 consolidated appeals for reappraisement, consisting of beads and costume jewelry, was manufactured by about 20 different companies located in various places in Japan.

2. The merchandise was delivered by the manufacturers to Sanyei Corporation of Osaka, Japan, as the buying agent and shipper of said merchandise for the account of H & S Originals, the plaintiff herein, pursuant to an agency agreement dated October 10, 1961, which provided for 8 percent buying commission to be paid by plaintiff to Sanyei Corporation.

3. The merchandise was exported and shipped by Sanyei Corporation on or about and between October 31, 1961, and April 14, 1964.

4. The merchandise is not specified on the Final List of the Secretary of the Treasury, 93 Treas. Dec. 14, T.D. 54521, and, therefore, is subject to appraisement under the export provision in section 402 of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165. This basis for appraisement

is conceded by respective counsel to be correct, the entry and appraisement in each appeal having been made on that basis.

5. Appraisement in each case as to each item involved therein is at the invoiced unit value, plus a varied percentage in each case, packed, which percentage addition was either 2.3, 2.29, 2.299, 2.8, 1.3, 2.21, 2.27, 1.98, 2⅞, 2.276, 2.298, 2.058, or 2½ percent. Such appraisement was made on the basis of "such" merchandise, as defined in section 402(f)(4)(A) of the above amended tariff act.

6. Appraisement was made in accordance with a formula recommended by the line examiner of this merchandise. This resulted in an allowance of only 7 percent of the full f.o.b. invoice price which f.o.b. price included the invoiced unit price total, plus buying commissions and inland charges. The buying commissions and inland charges aggregated more than 7 percent of the full f.o.b. invoice price.

I, therefore, conclude as matters of law:

1. That the appraisement in each case is separable. *United States v. Schroeder & Tremayne, Inc., James H. Rhodes & Co.*, 41 CCPA 243, C.A.D. 558, and cases cited therein, and other cases cited in the foregoing decision.

2. That plaintiff has satisfactorily shown by competent and persuasive evidence that the appraiser's finding of value made on the basis of invoice unit prices, plus a varied percentage in each case under the above mentioned formula, is erroneous.

3. That plaintiff has satisfactorily shown by competent and persuasive evidence that the invoiced buying commission of 8 percent and the inland charges are correct and were paid by plaintiff to Sanyei Corporation, its buying agent.

4. That the export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165, of each item of merchandise imported in each of the 76 appeals for reappraisement herein, is represented by the invoiced unit price which includes packing and casing charges. That such export value also includes additions where voluntarily made upon entry or where added by the appraiser, for beads and/or stones.

Judgment will be entered accordingly.