(R.D. 11258)

BRENTWOOD ORIGINALS ET AL. *v.* UNITED STATES

Entry No. 110494, etc.

(Decided January 31, 1967)

*Glad & Tuttle* (*Edward N. Glad* of counsel) for the plaintiffs.
*Barefoot Sanders*, Assistant Attorney General (*Glenn E. Harris*, trial attroney), for the defendant.

WILSON, Judge: These three appeals for reappraisement were consolidated for purposes of trial.

The imported merchandise is invoiced as either cotton corduroy cushion covers, cotton-rayon upholstery, rayon Bemberg upholstery, cotton velveteen upholstery, or cotton-rayon floor cushions. Exportation from Japan was made on or about May 21, 1964, September 20, 1962, and November 26, 1962, respectively, in R64/18080, R63/4399, and R63/9037. The "maker" and seller of the merchandise is shown on the invoices received in evidence without being marked as Hirota Hoko, K.K., Osaka, Japan, and the shipper as Nichimen Co., Ltd., Osaka, Japan. A total of 19 items of the above articles is involved in the three appeals. Each item is separately invoiced at a specific price per dozen, said to be the "ex-factory" price. The total price thereof is also shown as well as "Export Charges" itemized and added thereto, the overall total allegedly representing the f.o.b. Japan price.

The merchandise was "Appraised at unit values shown in red ink, net, packed," or words to a similar effect. Thus, each of the 19 units of merchandise was separately and specifically appraised at a *per se* unit value per dozen, net, packed, which unit appraised value differed for each of the said 19 items and was higher in each instance than the unit invoiced at the alleged "ex-factory" price.

The appraisements were made on the basis of export value as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165. Counsel stipulated that the above basis for appraisement was correct and that the imported articles are not specified on the final list promulgated by the Secretary of the Treasury, 93 Treas. Dec. 14, T.D. 54521.

The statute under consideration, so far as pertinent herein, reads as follows:

Section 402 of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, *supra:*

(b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

\*　　\*　　\*　　\*　　\*　　\*　　\*

(f) DEFINITIONS.—For the purposes of this section—
　　(1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—
　　　　(A) to all purchasers at wholesale, or
　　　　(B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,
　　without restrictions \* \* \*.

The plaintiffs called two witnesses and offered in evidence one document, exhibit 1. Defendant introduced no evidence.

Harold Alden testified that he was vice president of plaintiff company; that this firm was in the business of importing decorative pillows and bedspreads from Japan; that he designs styles and materials and purchases the commodities needed from Japan; that he travels to Japan two to four times annually and stays between 3 weeks to 3 to 4 months. While in Japan he works with the various weaving mills and the factory of Hirota Hoko, K.K., in making decorative pillows. He testified further that the Nichimen company of Japan is his firm's "agent" and that their function was to accompany the witness at the time of negotiations with the mills and the factory "because the mills themselves would not negotiate with me directly," that being the practice in Japan, and that "they only deal with franchised firms for the mill." He negotiated for the piece goods from the mill "but Nichimen actually purchased the piece goods for me" using their

money for that purpose, but it was guaranteed by a prior letter of credit of the witness which he "had to open to the trading company, to guaranty the purchase." Alden identified a document which bears his name as an agreement between his firm and Nichimen. It was received over defendant's objection as plaintiffs' exhibit 1. He began importing in 1958 or 1959 and his method of doing business never changed with any of the people involved at the factory. (R. 3–10.)

On cross-examination Alden stated that *all* of the involved merchandise was made specially for his company (R. 14).

Plaintiffs' second witness, Tohru Kanaoka, testified that he was a salesman of textile goods for Nichimen Company, Inc., of Los Angeles over 4 years and was employed by Nichimen Co., Ltd., of Japan for 11 years prior thereto. There he was in the "made up Textile Department" and exported textiles to foreign countries. He stated that "Nichimen is importing and exporting firm, and Nichimen sell and buy merchandise, sometimes act as selling agent and buying agent; sometimes we transact technical know-how." (R.16.) He first met Mr. Alden when he came to Japan in 1957 or 1958 and stated he is familiar with Brentwood's "operation or formula by which" they import merchandise and with Nichimen's responsibilities in reference thereto since 1958 or 1959. He stated that Alden approached his firm and told them what he wanted (R. 16–17). He stated that Alden looks for a fabric and if found—

* * * we go together with him to the mill and we negotiate, and price, and deliver. Then we negotiate with sewing factory for making up pillow. Everything has been done. Then Nichimen will make a shipping document against that, against Nichimen's office. We get commission from them. [R. 17.]

He also testified that there was an export quota on "cotton pieces, made up textile goods"; that Nichimen never purchased piece goods or pillows or finished articles for Nichimen's own use that are made for Brentwood (R. 17–18).

Under cross-examination Kanaoka testified that Hirota Hoko was a separate company (factory) from Nichimen, and was a sewing company that Nichimen used. He had no firsthand knowledge as to stock ownership; that the material Brentwood uses is *not* suitable for domestic use and is different; that Nichimen did not buy such merchandise for its own use; that all of the merchandise "was specially made for this importer." (R. 19–20.)

Plaintiffs' exhibit 1 is an agreement between Brentwood and Nichimen of Japan under which Nichimen company is designated as Brentwood's agent. It recites that Nichimen is entitled to a buying commission of 6 percent on ex-factory prices; that Brentwood shall open an irrevocable letter of credit in favor of Nichimen immediately upon

placing orders with the latter; that consular and commercial invoices are to be made out in United States dollars on ex-factory basis, specifying all charges like inland freight to port, insurance to steamer, storage, hauling and lighterage, etc., as well as agent's buying commission; that the contract is effective as of November 1, 1958, and continues automatically until written notification is submitted by either party giving 3 months' previous notice; and that the "agency created is not exclusive." Alden testified that the agreement was still in effect.

As noted, *supra*, the defendant did not offer any testimony, so plaintiffs' evidence stands unrebutted. It is apparent that the oral evidence and exhibit 1 disclose that Nichimen became and was plaintiffs' buying agent in Japan at the time of exportation herein, albeit the agency was not an exclusive one. The duties imposed upon Nichimen by the agreement are in substance those held to be that of a buying agent in Japan or elsewhere for American purchasers. Such buying commissions are nondutiable. *United States* v. *Gitkin Co.*, 46 Cust. Ct. 788, A.R.D. 132, affirming *Gitkin Co.* v. *United States*, 43 Cust. Ct. 508, Reap. Dec. 9524; *United States* v. *Supreme Merchandise Company*, 48 Cust. Ct. 714, A.R.D. 145, affirming *Supreme Merchandise Company* v. *United States*, 46 Cust. Ct. 711, Reap. Dec. 10025. See also *Haddad & Sons, Inc.* v. *United States*, 53 Cust. Ct. 423, T.D. 10825.

The trial court in *Supreme Merchandise Company* v. *United States*, 46 Cust. Ct. 711, 714, Reap. Dec. 10025, *supra*, held that buying commissions paid by the importer are not a proper part of market value, stating:

Judicial authorities are consistent to the effect that a charge for services associated with the purchase of merchandise in the foreign market, and which is not an amount that inures to the benefit of the seller, is a buying commission, which, although affecting the cost of goods to the importer, is not part of the market value of the merchandise. *United States* v. *Case & Co., Inc.*, 13 Ct. Cust. Appls. 122, T.D. 40958; *United States* v. *Alfred Kohlberg, Inc.*, 27 C.C.P.A. (Customs) 223, C.A.D. 88; *Stein* v. *United States*, 1 Ct. Cust. Appls. 36, T.D. 31007. Under the cited authorities, the item in controversy, identified on the invoices involved herein as agent's commission or agent's buying commission, is a buying commission and, hence, is a nondutiable item.

See also *Fine Arts Bag Co.* v. *United States*, 56 Cust. Ct. 597, Reap. Dec. 11128.

Accordingly, on the authority of the above cases, the record herein would warrant a holding that the 6 percent buying commission was not part of the statutory export value. However, other primary and persuasive issues which vitally affect a determination as to such export

value must be resolved *before* a proper determination as to the status of the 6 percent buying commission can be considered.

Plaintiffs' brief alleges that appraisement was made "at the unit invoiced values which were expressed as ex-factory unit values, *plus the proportionate amount* of the inland freight charges and the 6 percent buying commission as noted on the invoices." [Emphasis supplied.] As noted, *supra*, the quoted language is *not* supported by the manner in which the appraisements were made. The appraised value for each of the 19 separate items was made at the invoice "unit values shown in red ink, net, packed." In other words, each of the 19 items was separately and distinctly appraised at a particular *per se* figure. There is no indication in the appraisements or in the evidence that any of the 19 items was appraised as above claimed by plaintiffs.

Plaintiffs allege that the "said buying commission should not be part of dutiable value, making the proper appraised value the invoiced unit values plus the proportionate amount of the inland freight charges as noted on the invoices." The court does *not* agree with that contention.

Appendix C, part of defendant's brief, shows by example a mathematical computation disproving the accuracy of plaintiffs' claim concerning a proportionate amount of inland freight and 6 percent commission being the extent of the appraised value. The example relates to the last item identified in invoice No. 4 of R63/9037. It shows an appraised value of $4.36 per dozen, net, packed, and the proportionate amount of buying commission per dozen as $0.3453, resulting, when deducted, in a figure of $4.0147. It also shows the invoiced unit "ex-factory" price as $4.05 per dozen, and that the proportionate amount of inland charges is equal to $0.2302, resulting, when added, in a figure of $4.2802. Thus the variation in plaintiffs' claim is $4.0147 per dozen and $4.2802 per dozen, both being different from the appraised value of $4.36 per dozen.

Plaintiffs infer that "A mere totaling of the appraised unit values by the number of units * * * shows that the total appraised value equals the total value on the invoices, which values also includes [sic] the 6 percent commission here in dispute." The example, *supra*, disproves the accuracy of that assertion.

Even if the mathematical computation did establish that a proportionate amount of charges was included in the appraised value, it would not be effectual in establishing separability of appraisement. The court in *Haddad & Sons, Inc.* v. *United States*, 53 Cust. Ct. 423, 425, 426, Reap. Dec. 10825, stated:

In the instant case, the mere fact that the mathematical computation, as indicated, *supra*, would eventually equal the sum of the invoiced unit price, does not establish separability of appraisement. Since the appraisement is not deemed separable, plaintiff cannot rely upon the

presumption of correctness as to those items not contested. It is, therefore, incumbent on the part of plaintiff to establish all necessary elements for a proper appraisement, i.e., freely offered, usual wholesale quantity, ordinary course of trade, etc. The record herein offers no such proof and is, therefore, deemed insufficient.

It also follows that there is no presumption of correctness attaching to any of the charges set forth on the invoices and it is incumbent on plaintiff to establish that said charges are the true charges which were in fact paid. It is quite conceivable that the same total appraised value may be arrived at by utilizing various different prices or charges. The record being silent in this respect, it is, therefore, deemed insufficient to establish the inland charges. Said charges could be deductible if satisfactory proof was adduced to establish that the merchandise was freely offered at the factory at a price not including the inland charges. This, of course, is based upon the premise that the burden of proof relating to the other portions of appraisement was established.

Plaintiffs also argue in their brief, page 4, "that the only issue involved herein is whether the 6 percent commission paid to Nichimen Co. is part of the appraised value." That argument erroneously assumes that the appraised unit value for each of the 19 specific items is "separable."

Plaintiffs cite the case of *Bud Berman Sportswear, Inc.* v. *United States,* 55 Cust. Ct. 574, Reap. Dec. 11056, affirmed on Government appeal in 57 Cust. Ct. 733, A.R.D. 211, appeal by the Government pending before the United States Court of Customs and Patent Appeals in appeal 5270. In that case, the appellate term stated that the record shows "such or similar shirts were sold both at *ex*-factory and f.o.b. prices, and that offers to sell were on either basis, at the buyer's choice. That is to say, the shirts were sold on both bases, but they were offered freely at either *ex*-factory or f.o.b. prices." The court also stated that it found no one price at which these shirts were sold to all purchasers, but that the merchandise was freely offered at an ex-factory price, and that the proofs support a finding that the "appraised value was computed by the examiner by adding to *ex*-factory price a charge for inland freight, so as to arrive at the equivalent of an f.o.b. price."

In the instant case, there *is* no evidence that such or similar articles were sold at ex-factory and f.o.b. prices, or offered for sale on either of those bases at the buyer's choice. Here there is no showing that the imported merchandise was "freely sold or, in the absence of sales, offered for sale" "to *all* purchasers at wholesale [or] in the ordinary course of trade to one or more selected purchasers at wholesale *at a price which fairly reflects the market value* of the merchandise" as is required by section 402(f) (1) (A) and (B), *supra*. The imported merchandise, as testified to by both witnesses for the importer,

*was made specially for this importer.* Moreover, there is no factual recital in the case at bar by the customs examiner such as existed in the *Bud Berman* case, *supra*, as to what that examiner ·there did in computing the value of the merchandise there involved. The appellate term in A.R.D. 211 agreed with the trial court (Reap. Dec. 11056) "both as ·to the weight to be accorded the examiner's testimony and as to the right of appellee, ·on the record before us, to rely on the presumption that the appraiser had correctly found all the elements of export value save that which appellee controverted, namely, the addition to *ex*-factory invoice price of an item described by the examiner as the inland charges which were enumerated on the invoice," and "we see no useful purpose to be served by elaborating here on the well reasoned opinion below as to the separability rule." The court concluded, "That under the circumstances under which the appraiser accepted *ex*-factory price and inland charges as invoiced, the appraisement is deemed to be separable, and the invoiced unit prices are, therefore, clothed with a presumption of correctness."

The facts of record herein do *not* conform to the principles of law which ordinarily permit of separability of items for appraisement purposes as expressed by the courts in *United States* v. *Schroeder & Tremayne, Inc., James H. Rhodes & Co.*, 41 CCPA 243, C.A.D. 558, which cites *United States* v. *Fritzsche Bros., Inc.*, 35 CCPA 60, C.A.D. 371, and *United States* v. *Freedman & Slater, Inc. (Household Utilities Mfg. Corp.)* 25 CCPA 112, T.D. 49241. See also *Dan Brechner et al.* v. *United States*, 36 Cust. Ct. 612, Reap. Dec. 8599, affirmed in *United States* v. *Dan Brechner et al.*, 38 Cust. Ct. 719, A.R.D. 71; *United States* v. *Supreme Merchandise Company*, 48 Cust. Ct. 714, A.R.D. 145, *supra*, and *Haddad & Sons, Inc.* v. *United States*, 54 Cust. Ct. 475, Reap. Dec. 10874 (application for review pending).

In *Paul Morris* v. *United States*, 57 Cust. Ct. 585, R.D. 11207 (application for review pending), the court held that the appraisements were *not* "separable in form." In that case the entered values in each appeal for reappraisement were "advanced by the appraiser in returning a unit value, net, packed, figure." That same appraisement method exists in the case at bar. Thus, the appraisements herein are *not* "separable in form."

As the facts of record herein under the above authoritative decisions do *not* permit separability of the various elements entering into the 19 separate appraisements, it was plaintiffs' burden to establish *all* the elements of a statutory export value. This it has not done.

In *F. B. Vandegrift & Co., Inc.* v. *United States*, 56 Cust. Ct. 715, R.D. 11169 (pending appeal by importer to the appellate term), the court indicated that an export value under the statute here involved cannot be found on the basis of the prices to a selected purchaser at

wholesale where the evidence did not show those prices fairly reflected the market value, and where the merchandise was freely sold or offered for sale to all purchasers at wholesale at less. favorable prices. In the instant case, there is no showing of any sales, or offers, or prices of such or similar merchandise to any other firm either for export or for home consumption in Japan, and, therefore, it cannot be determined on this record that the invoiced price "fairly reflects the market value" under section 402(f)(1)(B), *supra*. Note also *C. J. Tower & Sons of Niagara, Inc.* v. *United States*, 57 Cust. Ct. 601, R.D. 11212 (application for review pending), and *The American Greiner Electronic, Inc.* v. *United States*, 57 Cust. Ct. 616, R.D. 11221 (motion for rehearing granted).

In view of the state of the instant record, it is clear, notwithstanding that the invoiced 6 percent commission, as such, may be *bona fide*, that there is no substantial evidence that the appraised value for each item includes a proportionate amount of inland charges or commissions, or that the appraiser so included those items in his 19 separate appraised values. Hence, the appraisements are *not* separable and the importer was under the necessity to establish not only the correctness of the said commission, but the accuracy of the other invoiced charges, and the actual sale price or freely offered for sale price to all purchasers for each of the 19 involved separate items. Since actual sales were only shown of record to the importer, proof that the unit invoiced price of each item fairly reflected the market value of the merchandise was required, but was not offered. It must follow that plaintiff has failed to make out a *prima facie* case.

On the record herein, I find the following facts:

1. The merchandise covered by these three consolidated appeals for reappraisement consisted of either cotton corduroy cushion covers, cotton-rayon upholstery, rayon Bemberg upholstery, cotton velveteen upholstery, or cotton-rayon floor cushions, for a total of 19 separate items of merchandise in all.

2. The maker and seller is Hirota Hoko, K.K., of Osako, Japan. The shipper is Nichimen Co., Ltd., Osaka, Japan. The merchandise was exported on or about May 21, 1964, September 20, 1962, and November 26, 1962, respectively, in R64/18080, R63/4399, and R63/9037.

3. Each of the above 19 separate items of merchandise is invoiced at a specific price per dozen at the "ex-factory" price. The total price thereof, as well as itemized "export charges" and 6 percent buying commission are shown on the invoices to be added to the above ex-factory total price to represent the "F.O.B. Japan" total price.

4. Appraisement of each of the above 19 items was made at a separate and distinct unit value shown in red ink on the invoice, net, packed, on the basis of export value as defined in section 402(b) of

the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165.

5.   Counsel stipulated that the above basis for appraisement was correct and that the imported articles are not specified on the final list of the Secretary of the Treasury, 93 Treas. Dec. 14, T.D. 54521.

On the record herein, I conclude as matters of law:

1.   That the appraisement of each of the 19 items herein involved in these three consolidated appeals for reappraisement is not separable. *United States* v. *Schroeder & Tremayne, Inc., James H. Rhodes & Co.,* 41 CCPA 243, C.A.D. 558, and cases cited therein, and other cases cited in the foregoing decision.

2.   That the plaintiffs have not shown by competent and persuasive evidence that the appraiser's finding of value in each of the 19 items involved herein, made on the basis of the unit value shown for each item in red ink, net, packed, is erroneous.

3.   That the plaintiffs have not established any value as the correct statutory export value as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165, different from the appraised value.

4.   That the plaintiffs were under the necessity of establishing all of the elements in the foregoing statutory basis of value, but failed so to do.

5.   That the statutory export value as above defined for each of the 19 items herein involved is represented by the appraised unit value shown in red ink, net, packed, on the entry papers.

Judgment will be entered accordingly.