(A.R.D. 244)

SHARWELL BROS. SHOE CO.⎱ *v.* UNITED STATES
GLOBE SHIPPING CO., INC.⎰

Entry No. 828177–4.

Second Division, Appellate Term

(Decided October 10, 1968)

*Allerton deC. Tompkins* for the appellants.

*Edwin L. Weisl, Jr.*, Assistant Attorney General (*Brian S. Goldstein*, trial attorney), for the appellee.

Before RAO, FORD, and MALETZ, Judges

PER CURIAM: This is an application by appellants (plaintiffs below) for review of a decision and judgment of a single judge (Judge Beckworth) sitting in reappraisement. *Sharwell Bros. Shoe Co., Globe Shipping Co., Inc.* v. *United States*, decided November 15, 1967, 59 Cust. Ct. 731, R.D. 11386. The merchandise involved consisted of men's insulated boots and children's black side zipper boots that were imported from Japan. The items were appraised on the basis of export value, as defined in section 402(b) of the Tariff Act of 1930, as amended, at the c.i.f. prices shown on the invoice, less the amounts shown on that invoice for freight and insurance charges. There is no dispute that export value was the proper basis of appraisement. Appellants contended before the trial court, however, that the appraiser did not use the correct values and that he should have used the ex-factory prices. The appellants further contended that the appraiser did not allow for the proportionate amount of a 5 percent "seller's commission" in arriving at the proper export values and argued that this commission was, in reality, a nondutiable buying commission. Judge Beckworth sustained the action of the appraiser and held that the appellants had failed to overcome the statutory presumption of correctness attaching to the appraised values. Appellants maintain here in brief and oral argument that this decision is in error. We do not agree. Rather, we are in agreement with the decision and therefore affirm. Judgment will be entered accordingly. Because Judge Beckworth's opinion, findings and conclusions of law fully express our views and well

present the facts and law involved, we deem it appropriate to adopt the same as the basis for our judgment in this case. They are as follows:

BECKWORTH, Judge: The merchandise involved in this appeal for reappraisement consists of men's insulated boots and children's black side zipper boots, imported from Japan and entered at the port of New York on November 6, 1962.

It was appraised on the basis of export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, at the invoiced units of value, less items marked "X" (ocean freight and insurance premium). Plaintiffs do not contest the basis of value but claim that the correct values are:

| Item | Price per pair |
|---|---|
| Men's Insulated Boots | ¥769 or $2. 14 |
| Children's Black Side Zipper Boots | ¥250. 50 or $0. 70 |

It appears from the official papers, which were received in evidence, that the invoiced units of value were respectively $2.56 and $0.80 per pair, c.i.f. New York. The total c.i.f. price was $3,552. The invoice also lists various charges, such as inland freight, storage, haulage, amounting to $38, which it states were included in the f.o.b. price at Kobe. It then states:

| | |
|---|---|
| F.O.B. Price at Kobe, Japan | US$3, 006. 57 |
| Ocean Freight :– | 351. 63 |
| Insurance Premium :– | 16. 20 |
| Seller's Commission (5%) :– | 177. 60 |
| | |
| C.I.F. NEW YORK :– | US$3, 552. 00 |

Counsel for the plaintiffs stated at the first hearing that the dutiable values should be based on the ex-factory prices and at the second hearing that the appraiser should have allowed the seller's commission of 5 percent.

Plaintiffs do not claim in their brief that the separability doctrine is applicable and defendant contends that it is not. Under that doctrine, it has been held that, where the importer challenges only one item of an appraisement, the presumption of correctness as to the others has not been destroyed and he may rely upon them. *United States* v. *Fritzsche Bros., Inc.*, 35 CCPA 60, C.A.D. 371. This doctrine applies where the appraisement is made at an ex-factory-plus-charges value in which case the charges may be disputed without the necessity of proof that the ex-factory prices comply with the statutory definition of export value. *United States* v. *Supreme Merchandise Co.*, 48 Cust. Ct. 714, A.R.D. 145. It does not apply where the appraisement is made at unit values even though the invoice lists ex-factory prices

plus separate charges. *Valley Knitting Co., Inc., et al.* v. *United States*, 44 Cust. Ct. 599, Reap. Dec. 9627; *S. S. Kresge Co. et al.* v. *United States*, 45 Cust. Ct. 469, Reap. Dec. 9778; *Luckytex, Ltd.* v. *United States*, 56 Cust. Ct. 575, Reap. Dec. 11119; *Brentwood Originals et al.* v. *United States*, 58 Cust. Ct. 575, Reap. Dec. 11258.

The mere fact that a mathematical computation can be made from the invoice value-plus-charges, which would equal the appraised value does not establish the separability of the appraisement. *Haddad & Sons, Inc.* v. *United States*, 53 Cust. Ct. 423, Reap. Dec. 10825. An appraisement expressed in an f.o.b. port of exportation price is not normally considered separable. *Henry Picard, Jr.* v. *United States*, 57 Cust. Ct. 689, Reap. Dec. 11242. Where the invoice recited a c.i.f. price, which was stated to include certain enumerated charges among which were marine insurance and ocean freight, and the appraiser found a price equal to a c.i.f. price without showing that it embraced any or all of the charges listed, the appraisement was held not separable. *Luckytex, Ltd.* v. *United States, supra.*

In the instant case, the appraiser had before him an invoice which recited c.i.f. prices and listed charges included in an f.o.b. price and also listed other charges, including a "seller's commission." The appraiser appraised at the unit invoice c.i.f. prices, less two of the listed charges—ocean freight and insurance premium. There is nothing to show whether the value adopted by the appraiser included any of the other charges or the commission. Unless the record establishes that the charges or the commission were included in the *per se* appraised values, such charges or commissions may not be deducted therefrom. *Manhattan Novelty Corp.* v. *United States*, 54 Cust. Ct. 545, Reap. Dec. 10910 (rehearing granted, Ibid. 636, Reap. Dec. 10965); *Manhattan Novelty Corp.* v. *United States*, 54 Cust. Ct. 561, Reap. Dec. 10919 (rehearing granted, Ibid. 636, Reap. Dec. 10966).

In *Brentwood Originals et al.* v. *United States, supra,* each of the 19 items was invoiced at a specific price per dozen, said to be ex-factory. The invoice also showed the total price and itemized charges. The merchandise was appraised at *per se* unit values which were higher than the unit invoiced prices. There was evidence to establish that plaintiff employed a buying agent and paid him a 6 percent buying commission. The court said that the record would warrant a holding that the commission was not part of the statutory export value, but held that there was no showing that the appraised value was made up of ex-factory prices, plus inland charges and commission, and that the dutiable value could not be found by deducting the commission from the appraised value. The court held further that plaintiff was required to establish not only the correctness of the commission, but the

price at which the merchandise was freely sold or offered for sale to all purchasers.

The same situation prevails in the instant case. The issue, therefore, is whether the record is sufficient to establish the price at which the merchandise involved herein was freely sold or offered for sale to all purchasers under the requirements of the statute.

Plaintiffs introduced into evidence an affidavit of Nobuo Mimasu, export manager of Kohyei Trading Co., Ltd. (exhibit 1). The affiant stated that his company has been engaged since 1959 as agent of Sharwell Bros. Shoe Co., importer herein, to facilitate the exportation of footwear purchased by Sharwell; that it has been the practice of Mr. Jack Sharwell to call personally upon the manufacturer and to discuss with it designs, composition, prices and other details; that the affiant is present and serves as translator; that he receives a commission of 5 percent "based upon the price at the factory, or, as in this case, based upon the c.i.f. price New York"; that the reference on the invoice to the commission as a "seller's commission" is erroneous, and that it should have been specified as "purchasing agent's commission."

He also stated that the merchandise involved herein was purchased at the following prices at the factory of the manufacturer, costs and charges thereafter being for the account of Sharwell:

| Item | Pairs | Unit price | Total price |
|------|-------|-----------|-------------|
| Men's Insulated Boots | 1, 320 | ¥769. – | ¥1, 015, 080. – |
| Children's Black Side Zipper Boots | 214 | 250. 50 | 53, 607. – |
| | 1, 534 | | ¥1, 068, 687. – |

Plaintiffs' exhibit 2 is an affidavit of Shigemasa Uematsu production manager of Akimai Rubber Works Co., Ltd., manufacturers of rubber articles, including footwear. The affiant stated that he sold a large quantity of rubber footwear to Sharwell Bros. Shoe Co. in 1961 at the following prices ex-factory:

| Item | Price per pair – Yen |
|------|---------------------|
| Men's Insulated Boots | ¥769.– |
| Children's Side Zipper Boots | 250.50 |

He said that the items were produced to the specifications of Sharwell and were sold after lengthy negotiations about materials, construction, and prices. He stated that there was nothing unusual about the sale and that he freely offered the same footwear to any U.S. importer who purchased footwear at wholesale, but that at that time he did not sell the same items of footwear to any other U.S. buyers.

Mr. Jack A. Sharwell, who was president of Sharwell Bros. Shoe Co. in 1961, testified that he purchased the involved merchandise from Akimai Rubber Works Co. and that he employed Kohyei Trading Co. as interpreter and shipper of merchandise. He stated that his usual procedure when he goes to Japan to purchase merchandise is to go to the factory together with two people from Kohyei Trading Co. They would there meet with the production manager of Akimai Rubber Works Co., the purchaser of raw materials, the head chemist and his assistant, and two owners of the factory. They then discussed the following factors: Construction, design, composition, availability, quantity, weight, and price of merchandise. The price is arrived at by finding out the types of materials that are to go into the shoes, the design, and quality. In the instant case, the price agreed on for the men's insulated boot was ¥769, and the children's zipper boot, ¥250.50. These prices were f.o.b. Kobe. Payment was made by letter of credit which covered the c.i.f. price at port of entry in the United States. It included the price of the footwear, ocean freight, insurance, and 5 percent commission. Kohyei Trading Co. paid Akimai Rubber Works the amount due them in Japanese currency.

Mr. Sharwell testified that he had a verbal agreement with Kohyei covering their duties which included handling foreign documents, inspecting merchandise, finding suppliers, rendering technical service, and acting as an interpreter. He said there was a written agreement covering the fee arrangement by which Kohyei was to receive a 5 percent commission, but this agreement was not produced. The witness said the commission was based on any merchandise shipped to Sharwell through Kohyei; that it was not 5 percent of a purchase price or any specific price, and that he left it up to Kohyei to calculate it.

Mr. Sharwell stated that, in the instant case, there was an oral understanding or agreement with Kohyei that they were to get 5 percent of the total c.i.f. price. He said that the f.o.b. price, ocean freight, insurance, and commission, were totaled to arrive at a c.i.f. price. He was unable to explain how it was possible to include the commission in the c.i.f. price and yet find that it constituted 5 percent of that c.i.f. price.

According to the witness, he knew what the c.i.f. price was in February when he ordered this merchandise and that it would be the same in September when it was shipped. He said he made a contract for the merchandise and that it called for a firm price at any time of shipment of $2.56 c.i.f. for the men's rubbers, and $0.80 for the children's rubbers. Thus if the charges, such as inland freight, storage, and petty charges, were to vary from the time of purchase to the time of shipment, the difference would have been included in the factory's cost. He

also said that the f.o.b. price was the cost of the product before ocean freight, commission, and insurance were added, and that that was the price which he negotiated with the manufacturer.

This evidence may be sufficient to warrant a finding that Sharwell employed Kohyei as its buying agent and paid it a commission, although it does not establish clearly what that commission was. However, under the circumstances in this case, plaintiffs must also show the price at which the merchandise was freely sold or offered to all purchasers.

The evidence is conflicting as to whether plaintiffs purchased the merchandise ex-factory, f.o.b. Kobe, or c.i.f. port of entry. In view of Mr. Sharwell's statement that he had negotiated firm c.i.f. prices and that any variance in costs would be for the account of the factory, actual purchase at c.i.f. prices seems the more plausible.

Even if Sharwell purchased ex-factory, or f.o.b. Kobe, the evidence does not establish whether anyone else did or at what price. When Mr. Sharwell was asked if he knew if Akimai offered the same type of shoes to others, he stated, "I would say they had." When asked how he had knowledge that there were offers at the same price, he mentioned running into competitors who discussed different factories but he admitted that his knowledge was only general. Mr. Mimasu stated in his affidavit that he freely offered the same footwear to U.S. buyers, but he did not state at what price. The above-mentioned statements, unsupported by any specific evidence of actual offers or sales, are insufficient to establish that this merchandise was freely sold or offered to all purchasers at the prices at which it was sold to Sharwell. *Brooks Paper Company* v. *United States*, 40 CCPA 38, C.A.D. 495; *United States* v. *Baar & Beards, Inc.*, 46 CCPA 92, C.A.D. 705; *United Cutlery & Hardware Products Co.* v. *United States*, 54 Cust. Ct. 563, Reap. Dec. 10920. Accordingly, I find that plaintiffs have failed to meet their burden of proof.

On the record presented, I find as facts:

1. That the involved merchandise consists of men's insulated boots and children's black side zipper boots, imported from Japan and entered at the port of New York on November 6, 1962.

2. That the merchandise is not included on the final list published by the Secretary of the Treasury, 93 Treas. Dec. 14, T.D. 54521.

3. That the imported merchandise was appraised on the basis of export value as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, at the invoice unit c.i.f. prices, less items marked "X" (ocean freight and insurance premium).

4. That plaintiffs have failed to negate the presumption attaching to the appraiser's action that on or about the date of exportation of the involved merchandise, such or similar merchandise was freely sold or freely offered for sale to all purchasers in the principal markets of Japan in the usual wholesale quantities and in the ordinary course of trade for exportation to the United States at prices equivalent to the appraised values.

I conclude as matters of law:

1. That the statutory presumption of correctness attaching to the appraised values has not been overcome.

2. That export value as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for the determination of the value of the merchandise involved herein.

3. That said value is represented by the appraised values.

Judgment will be entered accordingly.